STOLLENWERCH ET AL. *v.* EURE.

[81 South. 594, Division B, No. 20705.]

1. LANDLORD AND TENANT. *Appeal to circuit court. Judgment for rent.*

In a proceeding by a landlord under Code 1906, section 2885 (Hemingway's Code, section 2383), to get possession of the rented premises, the trial being before a special court provided for by chapter 76, Code 1906 (chapter 43, Hemingway's Code), the circuit court on appeal could render judgment for rent up to the time of trial in the circuit court such trial being *de novo*, although the affidavit in the lower court did not charge that rent was due.

2. JUSTICE OF THE PEACE. *Appeal. Jurisdiction. Amount.*

The court provided in Code 1906, section 2885 (Hemingway's Code, section 2383) is a special court created under the power conferred under section 172, of the Constitution and is not

limited by the provision defining the jurisdiction of a justice of the peace as such in section 171 of the Constitution. The jurisdiction of the justice of the peace under this section is co-extensive with the county, and on an appeal from such court the circuit court trying the case *de novo* has jurisdiction to render judgment in excess of two hundred dollars. '

3. LANDLORD AND TENANT. *Failure to vacate. Double rent.*
   Where a tenant is notified to quit the rented premises and fails to do so at the expiration of his lease, double rent follows and is to be sued for and recovered in the same way as single rent would be but for the giving of the notice.

4. SAME.
   Under the facts in this case as set out in its opinion the court held that the correspondence showed clearly and definitely the time at which the tenant's right ceased and that the tenant was distinctly given notice to vacate for more than the statutory period and that his failure to vacate brought him within the statute imposing the double rent.          :

APPEAL from the circuit court of Forrest county.
HON. PAUL B. JOHNSON, Judge.

Action by C. C. Eure against E. F. Stollenwerch. On appeal to the circuit court there was judgment for plaintiff against defendant and the United States Fidelity & Guaranty Company, surety on appeal bond, and Stollenwerck appeals.

The facts are fully stated in the opinion of the court.

*Tally & Mayson* for appellants.

It is apparent that learned counsel for appellee misconceived the import of the pleadings and the issue involved. The appellant entered under a contract made in 1917; he stayed on the premises by virtue of the entry made under the contract. The tenancy had never been terminated by either party by the 10th of February, 1918. Negotiations were pending, but certainly they were referable to the original contract. There is no difference whatever as to the terms of the agreement when appellee offered the appellant the premises

for another year in March, 1918, and appellant accepted April 5, 1918, except the rent had been materially increased from thirty-five dollars to sixty dollars per month. The letters showing the negotiations and the final culmination of the negotiations in the contract of April 5th, were introduced not by the appellant, but by the appellee. There is nothing, then, in the contention that the letters subsequent to February 10, 1918, did not show any right of the appellant to further hold the premises, under the original lease.

Learned counsel makes labored effort to convince the court that the circuit court, on appeal in this case, had authority to render a personal money judgment against the appellant, and the surety on his bond. The authorities they cite not only fail to support such a contention but they are in harmony with the views contended for by appellant. That no such power was vested in the circuit court, they rely principally though not exclusively on the case of *Simpson* v. *Boykin*, 79 So. 852. An examination of that case shows that it conclusively supports appellant's contention and in fact is an authority for him, and if the case had been called to our attention when we prepared our brief in chief, we would have cited it. The plaintiff in that case proceeded in the justice court, as the plaintiff did in the case at bar. In order to give the justice court jurisdiction to hear and determine the case. Two facts were alleged in the affidavit—First: That the defendant's lease expired and that he held on; Second: that he was in arrears for rent in the sum of nine hundred dollars which he failed to pay. A writ was issued on the affidavit.

The case was tried in the justice court and appealed by the defendant to the circuit court. The appeal was dismissed on motion of the plaintiff. The point was sought to be made by the defendant that because the rent due and owing, amounting to nine hundred dollars and which was stated in the affidavit as a mere incident,

as to why possession should be obtained by plaintiff, that plaintiff was seeking to recover property where the sum and value exceeded the justice jurisdictional amount. However, such was not the case. It was manifestly the intention of the legislature to confer upon the justice power to dispossess refractory tenants who remained over without right, without reference to the value of the property or the amount involved. If the rent due and owing it was altogether unnecessary to obtain the judgment of the justice of the peace to recover the same. As we have heretofore stated, all that was necessary was for the landlord to make affidavit of that fact and which affidavit had really the same force and effect of a writ of execution. And that under the writ the officer would proceed to sell whatever was seized unless replevied; that it takes a replevin affidavit in the first instance to create a law-suit and the deduction to be drawn from all the statutes on the question is that when the attachment writ is executed, replevin affidavit made, then the papers are referable to the court having jurisdiction. Says this court in this case (*Simpson* v. *Boykin,* 79 So. 862, at the bottom of page 854): "This suit does not involve a demand for the value of the land or the value of the possession for any given period of time, but only for possession; but if the value of the use of the land applied the only value to be found would be the value between the termination of the tenancy and the date of the judgment, which, in this case, would be only eleven days."

It is perfectly apparent from the opinion that neither the justice court nor the circuit court undertook to render a personal judgment against the defendant in that suit in addition to a judgment of ouster of possession. It is true, as we have stated in our brief in chief, that on appropriate proceedings on an appeal from an unlawful entry or detainer court, that rent (not double rent) could be recovered, but that is the court upon which jurisdiction is specially conferred by the statute.

The summons must be served more than five days, and while in the case at bar the defendant did appear in the justice court, he appeared after having been summoned but three days before the time, designated, for the sole purpose of contesting the question of unlawful possession vel non, and not for the purpose of combating a demand for personal money judgment that was sought to be recovered, when none was sought.

The court might, of course, have jurisdiction for one purpose and not for another. The justice court in this case might have jurisdiction to determine whether or not Mr. Stollenwerck was unlawfully withholding the premises, but it would not be seriously contended that that court had jurisdiction to render a decree of divorce against him, nor is it thought it would have power to adjudge that he was owing the plaintiff a debt evidenced by a promisory note wholly unconnected with the rent matter.

In conclusion we re-assert that under section 2885 of the Code of 1906 (Hemingway's Code 2383), that the only judgment that could be rendered was a judgment of dispossession; that on appeal to the circuit court the only judgment that could be rendered would be such a judgment as a justice of the peace could render.

*J. C. Hannah* and *A. A. Hearst,* for appellee.

We submit that unless the appellant here can establish that he renewed this yearly lease of this property by continuing possession thereof in accordance with his defense in this case, that he must fail and that the judgment of the lower court must be affirmed because the supreme court of our state in the case of *Vicksburg Manufacturing & Supply Company* v. *Jaffray Construction Company,* 94 Miss. 282, 49 So. 116, says: ''We reiterate what has so often been said by this court, that parties must in this court abide by the issue made in

the lower court by the pleadings and proof." There-
fore we submit that all of the argument contained in
the brief of able counsel for appellant with reference to
the proposed and alleged contract made between ap-
pellant and appellee by their letters of March 23rd,
and April the 5th, is wholly irrelevant.

But appellant complains bitterly that the circuit
court not only rendered a judgment for the possession
of the property, but likewise a judgment for double
rent from the 10th day of August until the trial. And
learned counsel strenuously contend that this was an
unheard of procedure and that the circuit court was
wholly without jurisdiction to render such a judgment.
We submit, on the authority of the statute and the de-
cided cases, that this argument is unsound and unten-
able.

From a judgment of the justice court directing ap-
pellant to deliver possession of this property he sought
an appeal to the circuit court. Section 2895, Miss. Code
of 1906, (Hemingway's Code, 2393), provides this right
in the following language: "Proceedings against ten-
ant holding over-record to be kept, and appeals. The
magistrate before whom proceedings shall be had against
a tenant holding over, shall keep a full record of his
proceedings, and shall carefully preserve all papers in
the cause, and the same costs shall be taxed and paid as
are allowed for similar services in cases of unlawful
entry and detainer, and the right of appeal shall exist
as in such cases."

This section appeared as section 1343 in the Code of
1880 and our court in the case of *Paxton* v. *Oliver,* 70
Miss. 570, 12 So. 799, said: "The effect of the last
clause of section 1343 of the Code of 1880 in declaring
the right of appeal shall exist as in cases of unlawful
entry and detainer" was to adopt section 2657 of the
Code as to appeal and proceedings with it in the cir-
cuit court, and the appellant was entitled in the circuit
court to give evidence of rent due at the time of trial."

This position has been re-affirmed in the cases of *Harvey* v. *Clark,* 81 Miss. 166, and *Simpson* v. *Boykin,* 79 So. 852.

The means, methods and condition by and under which appellant found his way from the justice court to the circuit court are contained in section 82 of the Mississippi Code of 1906 (Hemingway's Code, section 62) which we here quote: "From unlawful entry and detainer court:—either party aggrieved by the judgment of the justices rendered in a case of unlawful entry and detainer, may, after final judgment, appeal to the circuit court of the county, within five days after the rendition of the judgment, by entering into bond with sufficient sureties, to be approved by the justice before whom the complaint was made, or in his absence before another justice, who tried the case, in a penalty double the amount of the rent recovered, but never less than two hundred dollars, payable to the opposite party, conditioned for the payment of such judgment as the circuit court may render against him; which appeal shall operate as a supersedas; and the justice shall send to the circuit court all the papers and proceedings, and a transcript of all orders and judgments in said cause, and shall deliver the same to the clerk of the circuit court, to be there docketed for trial; and the circuit court shall, at the first term, hear and determine the cause anew on its merits, in a summary way; and on the trial in the circuit court, the plaintiff may claim for all arrears of rent due at the time of such trial, or for the use and occupation of the premises up to that time; and the court shall cause judgment to be entered against the defendant and his sureties on the appeal bond for the amount found to be due, and award a fieri facias thereon, with legal interest and all cost; but the judgment against the surety shall not exceed the penalty of the appeal bond."

There was a judgment of the justice court directing appellant to surrender the possession of this property.

He desired to retain possession of this property and to consequently supersede the operation of this judgment. Hence he sought the benefits conferred by the above section. We respectfully submit that he cannot appropriate its benefits and repudiate its burdens. This section provides the time within which the appeal must be prosecuted, the condition of the bond, manner of trial in the circuit court and plainly and unequivocally stipulates that upon the trial of the case in the circuit court. "The plaintiff may claim for all arrears of rent due at the time of such trial, or for the use and occupation of the premises up to that time, and the court shall cause judgment to be entered against the defendant and his sureties on the appeal bond for the amount found to be due, and award a fieri facias thereon with legal interest and all cost."

Certainly this language is too plain and unambiguous to need any support by decided cases, but our court has re-affirmed the doctrine announced by this statute in *Paxton* v. *Oliver,* 70 Miss. 570, 12 So. 799; *Simpson* v. *Boykin,* 79 So. 852.

Learned counsel for appellant urge that the circuit court was without jurisdiction to render this judgment for six hundred and nineteen dollars because the justice court had no such jurisdiction. They say this prohibition is found in section 171 of the Mississippi Constitution. Counsel, however, admit that if this had been an unlawful entry and detainer proceeding that this jurisdiction would have obtained by reason of section 172 of the Constitution. Our court has also disposed of the question. In the case of *Simpson* v. *Boykin,* 79 So. 852, the objection was made that the justice of the peace did not have jurisdiction to try and dispose of the case because of the value of the year's rental of the place in controversy, which would exceed the amount of a justice's jurisdiction.

In answer to this, our court said (bottom page 853) "in regard to the jurisdiction of the court to entertain

this suit, we think the power of the justice of the peace in this case is a special statutory jurisdiction, deriving its force from legislation under section 172, Constitution 1890, providing that 'The legislature shall from time to time establish such other inferior courts as may be necessary and abolish the same whenever deemed expedient.' "

In view of the plain language of the statute and the decided cases, we do not think that the question of jurisdiction is open to argument. But learned counsel for appellant say that the court could not award judgment for rent because it was not made an issue in pleadings. And counsel further direct attention to the fact that the appellee could not ask for rent when he filed his case in the justice court because none was due. This is correct. Consequently there could be no claim for rent in the original affidavit. And we submit that it was unnecessary to file any claim for this rent in circuit court, because the very statute—and appellant availed himself of it in transferring this case from the justice court to the circuit court—put appellant on notice that on a trial of the case in circuit court the plaintiff could claim for any rent in arrears. Plaintiff did claim for this rent and proved the amount due by both the plaintiff and the defendant without a word of objection.

We respectfully submit that the right provided by the statute for claiming rent on the trial is analogous to the section of the Code providing for damages in cases of appeal. So far as we know, it is an unheard of procedure for the plaintiff on appeal to file any claim for the damages provided by law. The damages follow as an incident to the appeal. The appellant is charged with notice thereof when he prosecutes the appeal. But why should the appellant be heard to complain? Does the judgment do him an injustice? In view of the fact that the contention made in the pleading of appellant is contradicted by no less than five of his own letters in this record, we believe there can be no question as to

judgment for possession being correct. Does he owe the rent? The uncontradicted testimony of both the plaintiff and the defendant, and given without a word of objection, shows that appellant owes the rent. Why should the court adopt the view of appellant and reverse this case merely to have appellee file a new claim in this case or to file an independent suit to recover something that the statute expressly provides shall be recovered in this case? This we submit would be a vain and useless thing and is condemned by the language of the court, in *Harvey* v. *Clark*, 81 Miss. 166, 32 So. 906.

But, counsel for appellant say that under no circumstances should a judgment for double rent be rendered. We submit that the liability for the right to recover this double rent is found in section 1883 of the Miss. Code of 1906, section 2381, Hemingway's Code.

If there was ever a case where this section should find its application, it is the one at bar. The argument of counsel for appellant, that there was no authority to render a judgment against the sureties on the appeal bond for double rent is covered by Section 2883, Miss. Code of 1906 (Hemingway's Code, 2381) and by the provisions of section 82, Mississippi Code of 1906.

The judgment is in accord with the law and the facts, and justice having been done, the judgment should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee was the owner of a house and lot in the city of Hattiesburg, Miss., located at 802 West Pine street, and which was leased to the appellant in the year 1917 verbally for a term of five years, and the appellant paid for the first year by notes, which were taken up and paid as they matured. In the latter part of 1917 the appellant wrote the appellee, stating:

"As the time nears for the termination of the lease, I thought it was not amiss to write you with a view of renewal of lease as we are very reluctant to move and in fact are fearful cannot be so well situated elsewhere; if you do not intend using the house yourself, please give me the refusal of renting and I would be glad to hear from you just what are your intentions and what I may expect. I expect you know the conditions pertaining with the camp and just how unstable it is, with indications that this division will move out in a month or two and no one can predict the next move. So it is useless to expatiate. I have tried to be a good tenant and paid regularly. Can you not see your way clear to keep me?

The appellee replied to this letter stating that he desired the house himself. On the 10th of January appellant wrote another letter to the appellee acknowledging receipt of letter from the appellee and that the appellee would want the house one month hence, and stating that he had searched the city for a suitable house to move into, but that the city was crowded with army men, and pleading with the appellee to extend his time until April 10th, and that he would be willing to pay fifty dollars per month for the two additional months. The appellee wrote the appellant on January 11th stating that he was somewhat disappointed not to get the house, as it breaks up his plans, but that, on the other hand, he did not want to be unreasonable, and if the appellant would send a check for one hundred and twenty dollars he would let him keep the house until April 10th. On January 17th appellant wrote appellee inclosing the check as requested, which check would extend the lease until April 10th. On March 22d appellant wrote appellee another letter desiring to obtain the place after April 10th, and suggesting that maybe the appellee would lease the place

for another year.   Replying to this letter, appellee said:

"I beg to advise you that the rental on this place will be sixty dollars per month.   If interested will consider leasing this property at the same figure from first of next month for one year."

On the 28th of May appellant wrote appellee acknowledging receipt of a letter from appellee, in which letter he stated:

"If it is a question with you of securing a yearly rental tenant in place of monthly with thirty days notice, I desire to remain and am perfectly willing to enter into a yearly lease at sixty dollars per month. I take it that in view of the fact that no disagreement has occurred in our transaction and I have uniformly paid my rent in advance and your home has been conserved, and is in better condition now than when I entered it, you can have no objection to continuing me as tenant; followed by the full consent of Mr. Armistead, I hope you can see your way clear to .close with me," etc.

Appellee wrote appellant May 31, 1918, saying:

"I beg to advise that I have promised the house to Mr. Armistead and I expect you to turn same over to him.   I have been giving you the use of the house only as an accommodation, and it was distinctly understood you were to surrender same when I made demand for it.   I am writing Mr. Armistead that I have asked you to surrender same, and I will be glad to have you advise me promptly just when you will do so.'   The only concession I will make is that, if you cannot get out before then, I will let you have the house from June 10th to July 10th, but this is positively the limit.   If you desire to stay until that time let me have your check for sixty dollars to cover the month."

On July 1918, appellee wrote appellant:

"I herewith' return your check for sixty dollars offered in payment ,of rent of house at 802 West Pine street.   I have advised you that you could not continue

119 Miss.—55.

the use of my house and advised you that I would give you until July 10, 1918, to vacate. You are now ordered to vacate premises at once. I shall instruct my attorneys to institute ouster proceedings against you. Trusting you will not force me to resort to legal proceedings. Yours truly (Copy to Hanna & Foote, for their information.)''

On July 18, 1918, appellee wrote appellant:

''If you will return the check for sixty dollars I will allow you the use of my house until August 10, 1918. I will expect you to vacate on or before that date.''

The appellant returned the check as requested with the following letter:

''I am returning your check for house rent until August 10, 1918. This will in no ways be construed as waiving any claims I have against a yearly rental, however. I have made a proposition to Mr. Armistead which I have reason to believe he will accept and be agreeable to all concerned.''

Proceedings were instituted under section 2885, Code of 1906, section 2383, Hemingway's Code, by the appellee to get possession of the premises. Trial was had before a special court provided for in chapter on Landlord and Tenant, and possession was awarded to the appellee, and an appeal was taken by the appellant to the circuit court. In the circuit court there was a trial *de novo,* and judgment was rendered for six hundred and fifteen dollars, being double rent provided for in section 2883, Code of 1906, section 2381, Hemingway's Code, which reads as follows:

''Tenant Holding After Notice Liable for Double Rent.—When a tenant, being lawfully notified by his landlord, shall fail or refuse to quit the demised premises and deliver up the same as required by the notice, or when a tenant shall give notice of his intention to quit the premises at a time specified, and shall not deliver up the premises at the time appointed, he shall, in either case, thenceforward pay to the landlord double

the rent which he should otherwise have paid, to be levied, sued for, and recovered as the single rent, before the giving or notice could be; and double rent shall continue to be paid during all the time the tenant shall so continue in possession.''

From which judgment the case is appealed here.

The appeal from the justice court to the circuit court was taken under a bond for five hundred dollars with the United States Fidelity & Guaranty Company as surety, and the judgment against the surety on the appeal bond was limited by the circuit court to five hundred dollars, but the judgment against the appellant was for six hundred and fifteen dollars.

The contention is made here that the circuit court had no jurisdiction, on this appeal, to render a judgment for rent at all because the affidavit in the court below did not allege rent due and in arrears; and, second, that if it had jurisdiction to render any judgment, it could not render judgment in excess of two hundred dollars, because it is claimed the court below could not render judgment in excess of two hundred dollars. It is further insisted that the court could not on this record and in this proceeding, render judgment for double rent.

It is settled in the case of *Paxton v. Oliver,* 70 Miss. 570, 12 So. 799, that on an appeal from a proceeding under the chapter and section above referred to the circuit court could render a judgment for the rent up to the trial in the circuit court, and that the plaintiff was entitled in the circuit court to give evidence of the rent due at the time of the trial. In he case of *Simpson v. Boykin,* 79 So. 852, we held that the court provided for in the sections under which this suit was instituted was a special court created under the power conferred under section 172 of the Constitution, and was not limited by the provisions defining the jurisdiction of a justice of the peace as such in section 171 of the Constitution. While in that case there was no claim for

money, it was claimed that the value of the lease exceeded the justice's jurisdiction. It will be noted from the statutes above cited that the jurisdiction of the justice of the peace under this proceeding is coextensive with the county, and that the appeal and proceedings under appeal are as in cases of unlawful entry and detainer. We think therefore that the court had jurisdiction to render the judgment which it rendered in this case. On the question as to whether the court was authorized to give judgment for double rent, we think, from a careful reading of section 2883, Code of 1906, section 2381, Hemingway's Code, that where the tenant is notified to quit the premises and fails to do so at the expiration of his lease, double rent follows and is to be sued for and recovered in the same way as single rent would be but for the giving of the notice.

We think in the case before us the correspondence shows clearly and definitely the time at which the appellant's right ceased, and he was distinctly given notice to vacate for more than the statutory period, and his failure to vacate under the facts of this record bring him within the statute imposing the double rent.

Judgment of the lower court will therefore be affirmed.

*Affirmed.*